IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHRISTOPHER YARBOROUGH, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-787-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## **OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Christopher Yarborough, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, Director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

## **I. BACKGROUND**

On March 20, 2014, in Tarrant County, Texas, Case No. 1313733D, following a bench trial, Petitioner was found guilty of possession with intent to deliver methamphetamine of one gram or more but less than four grams and sentenced to 20 years' imprisonment. Clerk's R. 45, ECF No. 11-15. Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. Mem. Op. 15, ECF No. 11-9; Electronic R., ECF No. 11-1. Petitioner also filed a post-conviction state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. Writ Rec'd 3, ECF No. 11-23; Action Taken, ECF No. 11-21. This federal petition followed.

The evidence at trial was summarized by the state appellate court as follows:

> [Petitioner] and his girlfriend Christi Jo Bass lived together in an apartment in Arlington, Texas. Police received a tip from a confidential informant (CI) that Yarborough and Bass were selling methamphetamine from the apartment. Police arranged for the CI to make a controlled buy of methamphetamine at the apartment, and the CI purchased methamphetamine from Bass at the apartment. Detective Eric Curtis of the Tarrant County Sheriff's Office obtained a warrant to search the apartment. Detective Curtis, along with several other officers, executed the warrant a few hours later.
>
> Seven people, including [Petitioner] and Bass, were inside the apartment when the police executed the search warrant. The apartment had three bedrooms; police determined that [Petitioner] and Bass shared one bedroom based on items found in the bedroom connecting them to that room and based on interviews conducted by police. Police found two safes underneath the bed in that bedroom. The larger safe did not contain any drugs or drug paraphernalia. The smaller safe contained a digital scale, fifty to one hundred small plastic baggies, and 3.55 grams of methamphetamine. The phrase "Boss + CJo"—which police learned were names for [Petitioner] and Bass—was handwritten with a hot pink marker on the back of the digital scale. Police also found two syringes filled with liquid methamphetamine inside a dresser drawer in that bedroom. Police searched the seven individuals and found 27.92 grams of methamphetamine in a purse belonging to one of the individuals, Cindy Barton. [Petitioner] had $650 in cash in his pocket.
>
> [Petitioner] and three other individuals—Christi Jo Bass, Cindy Barton, and Brian Perry—were arrested for possession of a controlled substance with the intent to deliver.

Mem. Op. 2-3, ECF No. 11-9.

## II.  ISSUES

Petitioner raises the following grounds for relief:

(1)  the evidence presented at trial was legally and factually insufficient (grounds one and two);

(2)  he was convicted for the same offense after acquittal in violation of double jeopardy (ground three); and

(3)  he received ineffective assistance of counsel at trial and on appeal (ground four).

2

Pet. 6-7, 11-14, ECF No. 1.[1]

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither barred by successiveness nor the statute of limitations and that Petitioner has exhausted his state-court remedies as to the claims raised. Resp't's Ans. 5, ECF No. 13.

## IV. DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear-and-convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000).

Finally, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-

---

[1] Because there are unpaginated pages attached to the petition, the pagination in the ECF header is used.

corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law" in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2004).

**A. Sufficiency of the Evidence**

Under his first and second grounds, Petitioner claims that the evidence at trial was both legally and factually insufficient to support his conviction because the only evidence that tended to implicate him was the uncorroborated testimony of his co-defendant Christi Jo Bass. Pet. 6-7, 11-12, ECF No. 1. A factual sufficiency claim is not cognizable on federal habeas review. *See Woods v. Cockrell,* 307 F.3d 353, 358 (5th Cir. 2002).[2] Instead, federal courts have extremely limited habeas review of claims based on the legal sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the United States Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas-corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard allows the factfinder broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that the factfinder draw "reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson,* 566 U.S. 650, 655 (2012) (quoting *Jackson,* 443 U.S. at 319). Courts view any

---

[2]The Court notes that the factual-sufficiency-of-the-evidence standard under *Clewis v. State,* 922 S.W.2d 126 129-30 (Tex. Crim. App. 1996), is no longer recognized in Texas courts. *See Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

4

required credibility determinations in the light most favorable to the finding of guilt. *United States v. Wise,* 221 F.3d 140, 154 (5th Cir. 2000). Determining the weight and credibility of the evidence is within the sole province of the factfinder. *United States v. Martinez,* 975 F.2d 159, 161 (5th Cir. 1992). Courts do not second-guess the weight or credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999). Further, where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Applying the *Jackson* standard and relevant state law, the state appellate court addressed Petitioner's sufficiency-of-the-evidence claim as follows:

> [Petitioner] argues that the evidence is insufficient to support his conviction. He argues that the evidence failed to show that he actually possessed a controlled substance and that the only evidence tending to show his possession was the uncorroborated testimony of Bass.
>
> In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.
>
> The trier of fact is the sole judge of the weight and credibility of the evidence. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.
>
> To prove possession, the State must prove that the accused (1) exercised actual care, custody, control, or management over the substance and (2) knew that the matter possessed was a controlled substance. When the accused does not have actual possession of the controlled substance or exclusive possession of the location where the controlled substance was found, additional independent facts or circumstances

connecting or linking the accused to the knowing possession of the contraband must support a conclusion that the accused had possession over the contraband. This is because, whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the contraband was more than fortuitous. The "affirmative links rule" is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs.

Relevant non-exclusive links tending to connect a defendant to knowing possession include (1) whether the defendant was present when the search was conducted, (2) whether the contraband was in plain view, (3) whether the contraband was in close proximity to and accessible by the defendant, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia was present, (11) whether the accused owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was found with a large amount of cash, and (14) whether the conduct of the accused indicated a consciousness of guilt. It is not the number of links that is dispositive but the logical force of all of the evidence.

[Petitioner] complains on appeal that the only evidence connecting him to the drugs found in the apartment was the uncorroborated testimony of his codefendant, Bass. But even excluding her testimony, the record reveals ample evidence tending to connect him to the methamphetamine and drug paraphernalia found in the apartment. [Petitioner] was present inside the apartment when police executed the search warrant. Police found 3.55 grams of methamphetamine, small baggies, and a digital scale in a small combination safe under the bed in the bedroom shared by [Petitioner] and Bass. Detective Curtis testified that the scale, the plastic baggies, and the large amount of methamphetamine indicated that the methamphetamine was intended for distribution. The scale had the words "Boss + CJo" handwritten on it. Detective Curtis testified that his investigation revealed that "Boss" referred to [Petitioner] and that "CJo" referred to Bass. The State had [Petitioner] show the trial court his knuckles, which were tattooed with the word "Boss." Police also found two syringes loaded with liquid methamphetamine in a dresser drawer in the bedroom. The bedroom also contained [Petitioner]'s personal items, including legal documents with his name and signature on them, men's clothing in his size, and a bag containing men's personal hygiene items. These direct and circumstantial links proved by the State establish that [Petitioner]'s connection with the methamphetamine was more than just fortuitous.

Viewing all of the evidence in the light most favorable to the prosecution, as

we must, and excluding the testimony of [Petitioner]'s co-defendant Bass, we hold that the logical force of the evidence lends itself to the conclusion that [Petitioner] possessed the methamphetamine. The links to [Petitioner] are sufficient to permit the trial court, as the finder of fact, to find beyond a reasonable doubt that [Petitioner] knowingly possessed between one and four grams of methamphetamine with intent to deliver.

Mem. Op. 8-12, ECF No. 11-9 (citations omitted).

Under Texas law, there was sufficient evidence to permit a rational finder of fact to conclude beyond a reasonable doubt that Petitioner committed the offense of possession of a controlled substance with the intent to distribute. As a result, the state court's decision comports with *Jackson* and is reasonable in light of the evidence at Petitioner's trial. Petitioner is not entitled to relief under his first and second grounds.

**B. Double Jeopardy**

Under his third ground, Petitioner claims that his conviction violates the double-jeopardy prohibition against a second prosecution for the same offense after acquittal. Pet. 7,13, ECF No. 1. The record reflects that, after the state rested its case-in-chief, Petitioner moved for an instructed verdict on the basis that the evidence was insufficient to prove the element of possession. The following colloquy occurred (any grammatical errors are in the original):

> [Defense counsel]: I would move for an instructed verdict of not guilty based upon the reason that there was insufficient evidence to connect [Petitioner] to the drugs.
>
> Now, if you analyze the evidence, there's some things that are not in evidence, like the search warrant affidavit. That's not probative of any issue, although it was discussed in the -- kind of the suppression hearing. But the evidence is the police ran a search warrant. At the time of the execution of the search warrant, there were two people -- three people in the room where the drugs was found -- drugs were found; two women, one who's pled guilty and one who is getting ready to plead guilty. She's not going to plead to this offense, but she's testified as to her involvement in this case.

7

They didn't -- if I'm not mistaken, they didn't prove up the 27 or 28 grams that was in Ms. Cindy Barton's purse. We've got two syringes in a panty drawer, which were already loaded. They've got [Petitioner] coming in having $650 on him, which was just about the amount that Cindy said -- or that Christi Jo said he left with that day. But the most important thing I think to realize is that there's the Lassaint case, L-a-s-s-a-i-n-t, in the Court of Criminal Appeals and it lists 17 things that are important to consider in possession. And I'm going to go over those and I don't want to belabor the issue, but number one is whether the contraband was in plain view or recovered from an enclosed place.

Well, it was in an enclosed place. It was arguably in a little safe at the corner of the bed where Christi Jo was standing when the police came in, right by the chair that Cindy was sitting in when the police came in. So it wasn't in plain view.

The others was the accused was the owner of the premises or had the right to possess the place where the contraband was found, or was the owner of the automobile. Well, [Petitioner] was certainly -- it put him there. It showed that he was there. And since the testimony is going to be based upon the co-defendant or an accomplice, as a matter of law, you have to corroborate what she says. So that puts him at the premises.

The accused was found with a large amount of cash. Well, I guess that's a relative term, large amount of cash, $650. The contraband was conveniently accessible to the accused or found on the same side of the vehicle as the accused. Well, that doesn't really apply. It wasn't convenient to [Petitioner] because he had only been there for a very short period of time.

The contraband was found in close proximity to the accused. Well, it was found in reasonable proximity to [Petitioner], but it was in -- once again, it was in the safe.

One of the other issues whether or not there was a strong residual odor of the contraband, which there was not. The seventh point; the accused possessed other contraband when he was arrested, which [Petitioner] did not.

Paraphernalia was in view or found on the accused. I don't think you could say it was in view, nor was any found on [Petitioner].

The physical condition of the accused indicated a recent consumption of the contraband. Well, there's no evidence that [Petitioner] was -- had used any drugs. Matter of fact, the evidence was that he was drug testing on probation.

Conduct by the accused indicated a consciousness of guilt. There's no

8

evidence to show that. No evidence to show that other than [Petitioner] was arrested there.

The others, the accused attempted to escape or flee, which [Petitioner] did not. The accused made furtive gestures, which [Petitioner] did not. The accused had a special connection to the contraband. None was shown.

Number 14, the occupants of the premises gave conflicting statements about relevant matters. I don't think there's any of that. There's just one person that testified.

And number 15, the accused made incriminating statements connecting himself to the contraband, which [Petitioner] did not.

The quantity of the contraband, which was 3.55 grams, except for the stuff in the panty drawer or in the purse, which was in the syringes. Or the accused was observed in a suspicious area under suspicious circumstances. That's one of the considerations, too. Those are 17 things. None of which has any greater weight than the other.

I'm referring to -- this case is 79 Southwest 3rd 736. So bearing in mind that the evidence against him is mainly from Christi Jo to tie him to the safe, she is an accomplice as a matter of law and you'd have to corroborate that in some way. So if it were charged to a jury, you would have to say -- first of all, you'd have to believe what she said beyond a reasonable doubt, and then the State would have to corroborate that, which they did not.

So basically, it's my position they haven't shown -- they haven't shown his possession. And I would urge that since we objected to the testimony about his so-called drug usage or drug dealing, all that would have been hearsay and I'm not sure exactly where we went with that. I think it was mainly sustained, but even so, that would be predicated upon hearsay, and objected hearsay is not probative evidence. I could show you case on that, but the gist of the matter is they did not prove a connection.

[T]hat is my position on my motion for a finding of not guilty on this case, Your Honor.

THE COURT: Very well. Thank you, [counsel]. Any response from the State?

[Prosecutor]: Yes, Your Honor. All we have to show is some corroboration. Just some. And I think we've shown plenty of corroboration. The fact that the words

"Boss" were written on the scale and [Petitioner] has "Boss" on his hand is a connection to his identity. We have paperwork in the very same room with his name on it. That's another link to him. We have clothing his size in the very same room. Men's hygiene items in the very same room, and those were all identified by Christi Jo as being his items.

We also have that he was detained inside the apartment. We had testimony that he slept there until noon and after that he was in and out of the apartment.

We have -- we also do have testimony that he had been inside the safe, that it was his safe, that he wrote on the safe, and that he dealt from the safe. And the money from the sales had been in the safe. So I think the case that [counsel] mentioned is a vehicle case, so I think it's somewhat distinguishable from a case involving a residence.

Also, we did have admissible testimony on the dealing and that he had been in that safe and had dealt drugs that day. So I think we just have to show some corroboration, but we've actually shown several options of corroboration, Your Honor.

THE COURT: [Defense counsel].

[Defense counsel]: Yes, Your Honor. Well, they're not corroborating. That's the evidence they have to corroborate. When she says this, that and the other, that's what they have to corroborate. They don't have Little "J" who now turns out to be Justin Anderson rather than J. Anderson. Well, that's for -- they talked about the fact that his name was on his hand and the name was on the scales, but when did that happen? When did his name go on the scales? Paperwork in his room. We know that mere presence where drugs are found is not sufficient evidence to convict. And that's what we've got is mere presence where drugs were found hidden in a safe that there's no corroboration that he had anything to do with that safe. And that's what has to be corroborated.

The fact that he slept in the room, it's what she said. They have to corroborate what she said. And it can be a small amount of corroboration, but they didn't. She said everything there was to convict him, but it's not corroborated. So it's a simple case of accomplice testimony. And if there's an accomplice, which she is, it's not corroborated.

Everything she says is self-serving and pointed at him when, in fact, at the time of the execution of this warrant he had been there for either a minute or less. So we would be hard pressed to say that he possessed anything that was in the safe.

Now, the other interesting thing is the testimony that he had a quarter, 7 grams, that he got for her and that it was thrown under a -- under something that they never found. That's just -- you certainly can't convict him on something that wasn't found.

They got Walter Crawford they could have called in. They could have brought in some other people, but they didn't, so there's no corroboration, no statements by [Petitioner], no inculpatory statements. So they just haven't met their burden. Thank you, Your Honor.

THE COURT: All right. Thank you, [counsel]. All right. ***I've considered all of the testimony that's been given, and I've come to the conclusion that [defense counsel]'s motion should be granted.*** And the reason why it should be granted is that in this case, [Petitioner] is charged with possession of a controlled substance with intent to deliver.

Now, from the testimony that the Court has heard, I don't see where the drugs have been placed in [Petitioner]'s hands for him to, in fact, sell or deliver. We have the testimony of --

[Defense counsel]: Christi Jo.

THE COURT: -- Christi, but with that, we need corroboration.

[Prosecutor]: Well, Your Honor, we don't have to show it was in his possession, we just have to show intent and that can be done circumstantially through scales, baggies, money, the amount of the drugs. So we don't even have to show dealing. We can show intent to deliver with just a drug kit. You know, all the items you would use to deliver. Because just the baggies and the scales show alone the intent to deliver. So we've relied on that in the past. We don't have to show an actual hand-to-hand exchange.

THE COURT: Well, I'm trying to figure out how is that --

[Defense counsel]: You have to show possession. I can go around all day intending --

[Prosecutor]: No, that's not correct.

[Defense counsel]: Well, it says possession with intent, but that's --

[Prosecutor]: Well, with intent we can show through circumstantial evidence being baggies, scales, things like that. That's what shows intent to deliver. We didn't

11

actually allege delivery of. If we had alleged delivery of, we would have to show hand-to-hand.

THE COURT: Right.

[Prosecutor]: But with intent to deliver, we're allowed to rely on things outside of hand-to-hand delivery, to show intent.

THE COURT: I guess what I'm having problems with is, all of this tends to show him in the area, but nothing shows -- other than the fact that his name was on it, or on the scales.

[Prosecutor]: Well, all the things surrounding it; his room, his paperwork, his clothes. He lives there. His name is on the scale. He's detained in the apartment. I don't know what more we could show except for a video or a fingerprint. And there was fingerprints not connected to anybody to it.

THE COURT: Well, if we had -- I'd like to have another witness there, too, that -- because there were several of them in there.

[Prosecution]: Right. And --

THE COURT: Who could tell us, who could corroborate what she's saying.

[Prosecutor]: Who may or may not be credible or profferable.

THE COURT: Yeah.

[Defense counsel]: Judge --

THE COURT: Let me hear from you.

[Defense counsel]: I was going to ask you about the next case. I'm ready to move on.

[Prosecutor]: Well, I'm not. I'm not done with this argument. Because I really truly believe, Your Honor, we have more than proof and corroboration. I mean, this is just like many, many, many cases we've had and tried and relied on the same types of evidence and even less evidence. So the State would argue we've more than met our burden.

[Defense counsel]: But those weren't my cases, Your Honor.

> THE COURT: I understand, [counsel]. And I'm going to look at it again because of what she said.
>
> (Pause in the proceedings)
>
> THE COURT: All right. The Court's going to reverse its decision on that. I'll deny your motion. I think that there is some corroboration. The corroboration being the fact that they did have the scales in the house, the paperwork with his name in there, the clothing in the same bedroom, the hygiene that was there in a bag, the safe with the name on it, the money that he actually had in his possession. So that is corroboration. It's not the kind of corroboration I would love to have, but it is enough, so I'll deny that motion.

Reporter's R., vol. 3, 155-66, ECF No. 11-13 (emphasis added).

Petitioner argues that the trial court's initial ruling on his motion for instructed verdict equates to a judgment of acquittal; thus, the court's reversal of its ruling implicates a double-jeopardy violation. Pet. 13, ECF No. 1. In *United States v. Martin Linen Supply Co.,* 430 U.S. 564 (1977), the United States Supreme Court reiterated that what constitutes an "acquittal" for purposes of application of the double jeopardy clause "is not to be controlled by the form of the judge's action"; rather, a court must "determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." 430 U.S. at 571.

Relying largely on state law, seemingly molded according to *Martin Linen,* the state appellate court overruled Petitioner's claim as follows:

> [Petitioner] argues that the trial court erred by finding him guilty in contradiction of its earlier ruling granting his motion for instructed verdict, thus violating double jeopardy.
>
> At the close of the State's case, [Petitioner] made an oral motion for a directed verdict, arguing that the evidence was insufficient to affirmatively link him to the methamphetamine found in the safe. The trial court initially granted the motion, but then the trial court continued to discuss the issues with the attorneys.

> After hearing more arguments from both sides and discussing the court's concerns, the trial court announced that it was "going to reverse its decision on that" and denied [Petitioner]'s motion for directed verdict. [Petitioner] did not object and began his case-in-chief.
>
> The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. Generally, this clause protects against a second prosecution for the same offense after acquittals. In the double jeopardy context, determination of whether an acquittal has occurred "is not controlled by the form of the judge's action" but instead by examining whether the judge's ruling, "whatever its label, actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense charged."
>
> The trial court's initial ruling on [Petitioner]'s motion for directed verdict was in the nature of an acquittal, but during the same discussion in which the trial court granted the motion, the trial court reconsidered its ruling and denied the motion. The trial court was within its discretion to reconsider this ruling. Because the trial court acted within its authority by withdrawing its initial grant of a directed verdict in favor of [Petitioner] after further argument by the parties, no double jeopardy violation occurred.

Mem. Op. 13-14, ECF No. 11-9 (citations omitted).

Having reviewed the context and substance of the trial court's comments, this Court cannot conclude that the state court's decision is contrary to or an unreasonable application of *Martin Linen.* The court properly followed *Martin Linen* by recognizing that the trial judge's characterization of his own ruling is not controlling for purposes of double jeopardy, and by inquiring into whether the judge's ruling, "whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." Further, in *Martin Linen,* unlike this case, the trial court not only rendered statements of clarity and finality but also entered formal judgments of acquittal; thus, this case is distinguishable. Petitioner is not entitled to relief under his third ground.

**C. Ineffective Assistance of Counsel**

Under this fourth and final ground, Petitioner claims he received ineffective assistance of trial

and appellate counsel. He asserts that trial counsel was ineffective by failing to bring letters from Christi Jo Bass to the attention of the trial court and by failing to object to the prosecutor's continued argument regarding Petitioner's motion for instructed verdict. Pet. 7, 14, ECF NO. 1. He asserts appellate counsel was ineffective by failing to file a reply brief to the state's brief on appeal. *Id.* at 14.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). To establish ineffective assistance of counsel a petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. The Supreme Court emphasized in *Harrington v. Richter* that—

> [t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)) (emphasis in original)). Accordingly, it is necessary only to determine whether the state courts' adjudication of Petitioner's ineffective-assistance claims is contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson v. Dretke,* 426 F.3d 306, 315-17 (5th Cir.

2005); *Schaetzle v. Cockrell,* 343 F.3d 440, 443 (5th Cir. 2003).

The state habeas judge, who also presided at Petitioner's trial, conducted a hearing by affidavit. Petitioner's trial counsel, Jim Shaw, responded to Petitioner's allegations as follows (any spelling, grammatical, and/or punctuation errors are in the original):

**Letters to Exonerate [Petitioner]**

>Pages 12 and 13 [of Petitioner's state habeas application] suggest that there were letters from a co-defendant that would exonerate him or otherwise help his case. I have minimal recall of the letters. A failure on the part of trial counsel to introduce the letters is ineffective if it is shown that the letters provided a benefit at the trial for [Petitioner] either at the guilt-innocence phase or punishment phase. That remains to be determined, I suppose, by the trial court. It smacks of ineffectiveness by trial counsel if the letters were available at trial and were not introduced.
>
>It is my understanding that the letters are in the possession of [Petitioner] and may be forthcoming from [Petitioner] upon his receipt of this response.

**Ineffectiveness by Allowing Trial to Continue**

>In reading [Petitioner]'s complaint, it appears that his issue is with the court finding him not guilty and then rescinding that finding and ultimately finding him guilty. [Petitioner] places blame on trial counsel whilst the blame regarding the "not guilty" versus the "guilty" should rest upon the trial court's findings and its indecisive undoing of declaring "not guilty" based on insufficient evidence.
>
>[Petitioner] very capably points out that the trial court made findings that there was insufficient evidence; that corroboration of a co-defendant was needed; and that [Petitioner] should receive a finding of "not guilty".
>
>I, as trial counsel, was ineffective by allowing the arguments to continue after the court ruled favorably on [Petitioner]'s motion for an instructed verdict:
>
>Trial counsel was ineffective in failing to leave the courtroom when the declaration of a verdict for [Petitioner] was announced. I was gutless, timid, and intoxicated with my own success and ultimately aghast at the court's un-ruling the "not guilty" and re-ruling the "Guilty". Counsel for [Petitioner] requested a verdict of not guilty after the State rested its case. The Court heard arguments by both parties in support of each's position. [Petitioner] requested the finding of not guilty.

Without leaving the bench, the Judge sat at the bench for a full uninterrupted 20 minutes. Thereafter, he recited findings of fact and his ruling as follows:

> [THE COURT]: All right. I've considered all of the testimony that's been given, and I've come to the conclusion that Mr. Shaw's motion should be granted. And the reason why it should be granted is that in this case, [Petitioner] is charged with possession of a controlled substance with intent to deliver. Now, from the testimony that the Court has heard, I don't see where the drugs have been placed in [Petitioner]'s hands for him to, in fact, sell or deliver. . . .
>
> . . .
>
> As a practical matter, how many times does counsel object and the court says," I am going to sustain your objection". Does that not mean, in fact, that the court has sustained the objection or does it mean he will in the future sustain the objection. I know what it means because in heated situations I have sat in silence until the judge asks me why I sit . . . and I have replied, "so when are you going to do it" (sustain the objection; or overrule the objection)
>
> In this case, the Court made its ruling based on his findings. "Mr. Shaw's motion should be granted." To confirm that he, in fact, ruled "Not Guilty", One can see that he later <u>reversed his decision</u>. What better proof that he found him not guilty than the court declare that it was <u>reversing his decision</u> and finding him not "not guilty". The United States Supreme Court in Evans v Michigan 133 S.Ct. 1069 (2013), opined that a directed verdict, once pronounced cannot be withdrawn. Yes, counsel was ineffective for allowing the proceedings to go beyond that part where the court declared "Mr. Shaw's motion should be granted."
>
> Trial counsel was ineffective. Counsel should have packed his bags and left the court room when the Judge stated his findings that there was insufficient evidence and that the testimony of Ms. Bass was not corroborated. When the court states that he "thinks the motion should be granted", this is akin to or the same as when the court says such things as "I am going to grant that motion" or "I am going to deny your request". Don't be the lawyer who sits defiantly in his comfy trial chair and glares at the Judge. The Judge will tell you to proceed. Further, don't be the attorney who says, "Judge, you said you were going to deny my request. I was just wondering when you were going to do it". Upon hearing the Court's findings and the Court's conclusion that the motion should be granted, trial counsel should have left the courtroom. I was ineffective by remaining in the courtroom and allowing the State to babble further with uninvited argument that the State did not have to prove "possession" only that it had to prove "intent". Where does that even come from?

17

SHR 76-82, ECF No. 11-23 (emphasis in original).

Based on counsel's affidavit, the documentary record, and his own recollection of the trial court proceedings, the state habeas judge made the following relevant factual findings:

13. [Petitioner] does not present the letters he says he gave Hon. Shaw.

14. [Petitioner] does not present any evidence that he gave Hon. Shaw the letters.

15. Hon. Shaw has "minimal recall" of any letters.

16. Hon. Shaw has represented a multitude of defendants in this Court.

17. This Court has personally watched Hon. Shaw represent defendants.

18. This Court has personal recollection of this case.

19. Hon. Shaw's argument for the directed verdict was that the State failed to show that [Petitioner] possessed the drugs.

20. If Hon. Shaw had letters from [Petitioner]'s co-defendant in his possession, as [Petitioner] alleges, Hon. Shaw would have used them at trial.

21. There is no credible evidence that [Petitioner] gave Hon. Shaw letters from the co-defendant.

22. Hon. Shaw's affidavit is credible and supported by the record.

23. [Petitioner] presents no evidence, or authority, that that outcome of the double jeopardy/directed verdict would have been different had Hon. Shaw made additional objections.

24. The Second Court of Appeals considered [Petitioner]'s double jeopardy issue on direct appeal.

25. There is no evidence that a reasonable likelihood exists that the outcome of the proceeding would have been different but for the alleged misconduct.

*Id.* at 89-80 (record citations omitted).

Based on its findings, and applying the *Strickland* standard, the state habeas court concluded

that Petitioner failed to prove that he gave counsel letters from his co-defendant or failed to use evidence to prove Petitioner's innocence; (2) that counsel's treatment of the directed-verdict hearing constituted deficient performance; (3) that counsel's representation fell below an objective standard of reasonableness; (4) that but for counsel's alleged deficient conduct the result of his trial would have been different; or (5) that he received ineffective assistance of trial counsel. *Id.* at 93-94. The Texas Court of Criminal Appeals, in turn, denied relief based on the habeas court's findings.

Petitioner has not presented clear and convincing evidence to rebut the state courts' factual findings: thus, deferring to those findings, the state courts' adjudication of the claims was not an unreasonable application of *Strickland*. Petitioner's bald assertion that counsel had, but failed to present to the trial court, letters from his co-defendant Christi Jo Bass exonerating him, fails to raise a constitutional issue in a federal habeas proceeding. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983). And, given that the appellate court concluded it was within the trial court's discretion to reconsider its ruling on the motion for instructed verdict under the circumstances of this case, Petitioner cannot satisfy the prejudice prong of *Strickland*.

Petitioner claims that his appellate counsel was ineffective by failing to file a reply brief to the state's brief on appeal. Pet. 14, ECF No. 1. In the state habeas proceeding, appellate counsel Barry Alford responded, via affidavit, that upon receiving a letter from Petitioner requesting that he file a reply brief, he reviewed Petitioner's file, including his initial brief and the state's brief, and informed Petitioner that he believed he had sufficiently addressed all of the points that he wanted to be addressed in his original brief. Writ Rec'd 63, ECF No. 11-23.

Under Texas law, "[t]he appellant *may* file a reply brief addressing any matter in the appellee's brief. However, the appellate court may consider and decide the case before a reply brief

19

is file." TEX. R. APP. P. 38.3 (emphasis added). Based on counsel's affidavit, the state habeas court found that there was no evidence that a reply brief was required; that counsel's decision not to file a reply brief was based on reasonable appellate strategy; and that there was no evidence or legal authority that the result of his appeal would have been different had counsel done so. Writ Rec'd 90-91, ECF No. 11-23. Based on its factual findings, and applying the *Strickland* standard, the court concluded that Petitioner had failed to prove that appellate counsel's representation was deficient or that but for counsel's failure to file a reply brief, the result of his appeal would have been different. *Id.* at 95-96. The Texas Court of Criminal Appeals, in turn, denied relief based on the habeas court's findings.

Petitioner has not presented clear and convincing evidence to rebut the state courts' factual findings: thus, deferring to those findings, the state courts' adjudication of the claim was not an unreasonable application of *Strickland.* Appellate counsel made a reasoned decision not to file a reply brief, or that he perceived no need to do so, and Petitioner offers no meritorious argument or issues that counsel should have made. Such strategic decisions by counsel are virtually unchallengeable. *Strickland*, 466 U.S. at 690. Petitioner is not entitled to relief under his fourth ground.

## VI. CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and a certificate of appealability is DENIED.

**SO ORDERED** on this 2nd day of July, 2018.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**